**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

OLD REPUBLIC NATIONAL        :
TITLE INSURANCE COMPANY,     :
                             :
      Plaintiff,             :
                             :        CIVIL ACTION NO.
      v.                     :        2:12-CV-0004-RWS
                             :
HARTFORD ACCIDENT AND        :
INDEMNITY COMPANY,           :
                             :
      Defendant.             :

## <u>ORDER</u>

This case is before the Court on Defendant's Motion for Summary

Judgment [27], Defendant's Motion for Hearing Regarding Motion for

Summary Judgment [28], Plaintiff's Motion for Summary Judgment [29], and

Plaintiff's Motion for Hearing Regarding Motion for Summary Judgment [33].

After reviewing the record, the Court enters the following Order.

### Background

In a prior declaratory judgment action against Vincent Fitzgerald

("Fitzgerald") and Rhett Burruss ("Burruss") and their law firm Fitzgerald and

Burruss, LLC ("F&B"), Hartford Accident and Indemnity Company

("Hartford")  obtained a default judgment from this Court that it had no duty to

provide coverage under a professional liability policy and that the policy was rescinded (the "Hartford Declaratory Judgment Action").  (Defendant's Statement of Material Facts ("Def.'s SMF"), Dkt. [27-18] ¶ 1.)  Subsequent to this Court's ruling, Old Republic National Title Insurance Company ("Old Republic") obtained a consent judgment against Fitzgerald and F&B for various professional negligence claims (the "Consent Judgment").  (Id. ¶ 2.)  In the present action, Old Republic seeks to recover the amount of the Consent Judgment from Hartford.

*Hartford-F&B Professional Liability Policy*

F&B purchased a professional liability insurance policy issued by Hartford, which named Fitzgerald, Burruss and F&B as Insureds (the "Policy").  (Id. ¶ 3.)  The Policy was issued for the period beginning August 28, 2008 through October 27, 2008, renewed for the policy period October 27, 2008 through October 27, 2009, and renewed again for the policy period October 27, 2009 through October 27, 2010.  (Id. ¶ 4.)  The Policy was a "claims made and reported" policy, meaning that it covered only claims made and reported during the Policy period.  (Id.)

2

Fitzgerald initially applied for the Policy on August 18, 2008. (Defendant's Reply to Plaintiff's Response to Defendant's Statement of Material Facts ("Def.'s Reply SMF"), Dkt. [39] ¶ 5.)  The application contained a number of questions to be answered "yes" or "no."  (Def.'s SMF, Dkt. [27-18] ¶ 5.)  These questions are routinely asked of applicants seeking lawyers' professional liability insurance through Hartford, and the answers are used by Hartford's underwriting department to make a decision as to whether to accept the applicant as an insured for the issuance of a policy.  (Id. ¶ 6.)

Question No. 10 on the application asks: "Is any member of the firm aware of any act, error or omission that could result in a professional liability claim being made?" (Id. ¶ 7.)  Fitzgerald answered "no" to this question. (Def.'s Reply SMF, Dkt. [39] ¶ 7.)  In reliance on Fitzgerald's representations in the August 18, 2008 application, Hartford issued the Policy.  (Id. ¶ 8.)  On August 9, 2010, Fitzgerald completed another application for renewal of coverage with Hartford.  (Id. ¶ 9.)  Question No. 8 on the renewal application asks: "Is any member of the firm aware of any act, error, or omission that could result in a professional liability claim being made?"  Again, Fitzgerald answered "no."  (Id.)  In reliance on Fitzgerald's representations in the renewal

3

application, Hartford renewed the Policy from October 27, 2010 to October 27,

2011.  (Def.'s SMF, Dkt. [27-18] ¶ 10.)  The Policy was cancelled on December

27, 2010, at the request of the Insureds.  (Id. ¶¶ 4 n.1, 11.)

The Policy, effective August 18, 2008 through October 27, 2010,

provided as follows:

> Subject to the limits of liability, the company shall
> pay on behalf of the insured all sums...by reason of
> any act, error or omission...the insured shall become
> legally obligated to pay...provided always that: (1)
> The insured's liability arises out of the insured
> performing or failing to perform professional services
> for others; (2) Such damages result from a claim that
> is first made against the insured during the policy
> period and is reported in writing to the Company
> immediately but in no event later than sixty (60) days
> after the expiration of the policy period; ...(4) As of
> the effective date of this coverage form, no insured
> knew or could have foreseen that such act, error or
> omission, or personal injury could result in a claim.

(Id. ¶ 12; Pl.'s SMF, Dkt. [29-1] ¶ 3.)  The Policy contains the following
exclusions:

> A. This insurance does not apply to:
> 1. Claims arising out of an act, error, omission, . . .
> committed by the insured or at the insured's direction
> with actual dishonest, fraudulent, criminal or
> malicious purpose or intent. . .;
> . . .
> 13. Claims arising from defects in title of which the
> named insured had knowledge at the date of issuance

4

of such title insurance;
14. Any claim based upon or arising out of breach of
underwriting authority by the insured in his capacity
as title insurance agent.

(Def.'s SMF, Dkt. [27-18] ¶ 13.)  In the event of a claim, the Policy provides

that an insured must cooperate with Hartford.  Specifically, it provides:

> The insured shall cooperate with the company.  At the
> company's request, the insured will submit to
> examination and interrogation under oath, as
> requested by a representative of the company.  The
> insured, at the request of the company and without
> charge to the company, shall: . . . (3) give written
> statements to the company's representatives and meet
> with such representatives for the purpose of
> investigation and defense.

(Id. ¶ 15.)  Further, the Policy states:

> No action shall lie against the Company unless, as a
> condition precedent thereto, the insured shall have
> fully complied with all the terms of the coverage form
> and the amount of the insured's obligation to pay shall
> have been finally determined . . . by final judgment
> against the insured.  Any person who, or organization
> which, has secured such judgment . . . shall thereafter
> be entitled to recover under this coverage form to the
> extent of the insurance afforded by this coverage
> form.

(Pl.'s SMF, Dkt. [29-1] ¶ 4.)

The Policy further provides that all coverage is "subject to the limits of liability as set forth in the declarations and to all the exclusions, conditions, and all other terms of this coverage form and the policy which forms part of it." (Def.'s SMF, Dkt. [27-18] ¶ 14.)  The Policy also states: "In granting coverage under this coverage form, the company has relied on the representations made in the process of applying for the policy.  All such representations are the basis of coverage under this insurance."  (Def.'s Reply SMF, Dkt. [39] ¶ 16.)  And:

> In the event misrepresentations are made or the insured fails to state facts which materially affect the acceptance of the risk or the hazard assumed by the company under this coverage form, this insurance in its entirety shall be void and of no affect whatsoever. . . . Any statements or misrepresentations made to any agent of the company shall be deemed to be made to the company itself.

(Id.)  Finally, the Policy states:

> In the event that during the policy period the insured becomes aware of any act, error, omission, personal injury, or circumstance [which may give rise to a claim to which this coverage form applies], . . . the insured shall as soon as practicable during the policy period give written notice to the company. . . .

(Id. ¶ 17.)

6

On or about September 18, 2000, Fitzgerald's professional corporation, Vincent Fitzgerald, P.C., entered into a contract with First American Title Insurance Company, which appointed Fitzgerald P.C. as its agent for purposes of issuing title insurance policies in Georgia.  (Pl.'s Statement of Additional Material Facts ("SAMF"), Dkt. [31] ¶ 1.)  Hartford alleges that on April 22, 2002, F&B was substituted for Fitzgerald P.C. via amendment and became the title issuing agent for First American.  (Def.'s Reply SMF, Dkt. [39] ¶ 18.)

Hartford alleges that Fitzgerald was involved in at least twelve instances of professional negligence involving First American from 2005 to 2008, and that Fitzgerald was directly notified by First American of at least six claims from 2007 to 2011.  (Def.'s SMF, Dkt. [27-18] ¶¶ 19, 21.)  Old Republic alleges that Fitzgerald did not receive some of the notices from First American (the notices dated November 20, 2007, January 9, 2008, and June 12, 2008), and alleges that the matters occurring after the August 2008 application date are not relevant to this action.  (Pl.'s Resp. SMF, Dkt. [31] ¶ 21.)  Hartford counters that according to handwritten notes made by Laura M. King, Claims Analyst for First American, she had direct communications with Fitzgerald regarding the November 2007 and June 2008 claims.  (Def.'s Reply SMF, Dkt. [39] ¶ 21;

Supplemental Affidavit of Laura M. King, Dkt. [38-1] Ex. 1 ("per Vince

Fitzgerald, has documentation that loan is paid"), Ex. 3 ("Spoke to Vince 6-19-

08 @ 2:47 – said . . . legal is correct.  Does not see any reason to correct deed;

does not agree with examiner.").)  Fitzgerald did not report knowledge of any

potential claims on the 2008 Policy application.  (Def.'s SMF, Dkt. [27-18] ¶

22.)

*Old Republic-F&B Lawsuit*

F&B served as title issuing agent for Old Republic from May 17, 2002

until August 17, 2010.  (Id. ¶ 23.)  On August 20, 2010, Old Republic brought

suit against F&B and Fitzgerald in Superior Court of Hall County seeking an

accounting for funds received by the defendants under their Agency Agreement

with Old Republic, and damages.  (Hall County Complaint, Dkt. [27], Ex. 10).

Old Republic's Complaint alleges, among other things, that the defendants

misused funds from an escrow account and that defendants were negligent in

failing to pay off multiple security deeds out of loan proceeds.  (Hall County

Amended Complaint, Dkt. [27], Ex. 10.)

8

Old Republic's claims were reported to Hartford in September 2010, during the Policy period.  (Pl.'s SMF, Dkt. [29-1] ¶ 6.)  Philip Tellerine, Senior Claims Consultant for Hartford, testified that the act, error or omission upon which the Homestar and Excel claims (two of the claims in the Old Republic suit) were based were committed during the Policy Period.  (Philip Tellerine Deposition, Dkt. [29-5] at 8:8-15.)  He also testified that he had no evidence or information that as of the Policy's effective date, F&B or Fitzgerald knew of or could have foreseen those claims, stating his belief that the Homestar and Excel transactions occurred around the middle of the Policy period.  (Id. at 8:16-25 - 9:1-24.)  In addition to the Old Republic claims, on September 21, 2010, Gordon Alexander asserted a claim against F&B alleging that on September 8, 2010, F&B closed a transaction by which the Paul C. Harris Revocable Trust sold property and received a check from the firm for the net proceeds in the amount of $126,305.95, but the check from escrow funds bounced.  (Def.'s SMF, Dkt. [27-18] ¶ 25.)

Gregory Leffard, Vice President of Professional Liability for Hartford, is responsible for development of underwriting practices and procedures and implementation of the same for Hartford's Lawyers' Professional Liability

9

Department.  (Gregory Leffard Affidavit, Dkt. [27-6] ¶ 2.)  He testified that circumstances that might result in a professional liability claim are an integral part of the underwriting process, as well as the decision to issue policies, including the F&B Policy.  (Id. ¶ 26; Def.'s SMF, Dkt. [27-18] ¶ 26.)  He also testified that: "Under no circumstances would Hartford have issued a policy to an insured where there was a perceived high risk of a professional liability claim, let alone the near certainty of multiple such claims."  (Id.)

On November 23, 2010, Philip Tellerine wrote two letters to Dennis O'Brien as personal counsel for Fitzgerald.  The letters acknowledged claims by Old Republic and Gordon Alexander against Fitzgerald, addressed Hartford's coverage position as to the claims, and stated that Hartford was reserving its rights as to coverage in light of Hartford's continuing investigation of the claims.  (Def.'s SMF, Dkt. [27-18] ¶ 27.)  On December 27, 2010, Hartford counsel wrote to O'Brien and requested that Fitzgerald "submit to examination and interrogation under oath" as required by the Policy.  (Id. ¶ 28.)  Hartford was informed by O'Brien that Fitzgerald was unavailable for any type of examination or cooperation.  (Id.)

10

Meanwhile, on December 6, 2010, Hartford's counsel contacted Old Republic through its attorney, William B. Brown, and requested that Old Republic provide information to Hartford regarding Old Republic's investigation of the activities of Fitzgerald and F&B relating to Old Republic's complaint against them.  (Pl.'s SMF, Dkt. [29-1] ¶ 8.)  On December 14, 2010, Old Republic provided Hartford a copy of the bank statements of the insureds, including a CD containing the individual transactions of F&B.  (Id.)  Old Republic was then informed that Hartford had retained Carlock Copeland to represent its insureds in Old Republic's underlying suit.  (James D. Partin Affidavit, Dkt. [29-6] ¶ 5.)  Old Republic was not informed at that time that Hartford was denying coverage for Old Republic's claims or challenging the validity of the Policy.  (Id.)  Old Republic's suit against the Hartford insureds was in default when Old Republic was contacted by Carlock Copeland.  (Id. ¶ 7.)  On February 21, 2011, Old Republic agreed to a Consent Motion to Open Default, but states that it would not have agreed to the motion if it had known that Hartford was denying coverage for the claims.  (Id. ¶ 16.)

Carlock Copeland undertook the defense of Fitzgerald and F&B in the underlying Old Republic suit and filed an Answer and Affirmative Defenses

and Responses to Old Republic's discovery requests.  (Pl.'s SMF, Dkt. [29-1] ¶ 15.)  Philip Tellerine testified that around February 23, 2011, Hartford "probably" had in its possession the facts on which Hartford's own declaratory judgment action against F&B and Fitzgerald was based.  (Philip Tellerine Deposition, Dkt. [29-5] at 13:22-25 - 14:1-12.)  Hartford now alleges that a substantial portion of its case for rescission was learned in the investigation and discovery process after it filed is complaint for declaratory judgment.  (Def.'s Response to Pl.'s SMF, Dkt. [37] ¶ 16.)

On March 7, 2011, Carlock Copeland served Interrogatories and Request for Production of Documents on Old Republic, to which Old Republic was required to respond.  (Pl.'s SMF, Dkt. [29-1] ¶ 17.)  James Partin testified that on March 2, 2011, Peter Werdesheim of Carlock Copeland sent an email to Old Republic's attorney asking, "I wonder if there's any way we can bring about a global resolution of this mess."  (Id. ¶ 18.)  On March 3, 2011, Old Republic responded to the email in the affirmative, and Carlock Copeland requested a settlement demand letter from Old Republic regarding its claims against Hartford's insureds.  (Id.)  Werdesheim requested a demand letter "that emphasizes the arguably covered claims against my clients," and Old Republic

12

responded on March 14, 2011 by making a settlement demand.  (Id.)  Old

Republic did not receive a response from Hartford or Carlock Copeland to its

settlement demand, nor was it provided with any statement that Hartford was

denying the validity of the Policy or the coverage of Old Republic's claims

under the Policy.  (Id. ¶ 19.)  Old Republic filed its required responses to

Carlock Copeland's Interrogatories and Request for Production of Documents

on April 18, 2011.  (Id.)

On or about April 12, 2011, the Policy premium was tendered to F&B.

(Def.'s SMF, Dkt. [27-18] ¶ 29.)  Hartford filed a complaint for declaratory

judgment on April 14, 2011, requesting that this Court enter a judgment

rescinding the Policy, or, in the alternative, a declaratory judgment that Hartford

did not have an obligation to provide coverage to F&B.  (Id. ¶ 30.)  Hartford did

not name Old Republic as a party, even though it was aware of Old Republic's

claims.  (Pl.'s SMF, Dkt. [29-1] ¶ 20.)  It was not until April 20, 2011, when

Hartford filed a Motion to Intervene and Stay Proceedings in Old Republic's

suit, that Old Republic learned that Hartford was denying coverage and validity

of the Policy.  (Id. ¶ 21.)  In its response to Hartford's motion, Old Republic

stated that it had not been named as a party to the Hartford Declaratory

13

Judgment Action and therefore, any adjudication in that case concerning the Policy or its coverage would not be binding on Old Republic.  (Id.)  Ultimately, F&B failed to respond to Hartford's complaint and on June 7, 2011, this Court entered a default judgment that Hartford had no duty to provide coverage under the Policy and that the Policy was rescinded.  (Def.'s SMF, Dkt. [27-18] ¶ 20.)

The Hartford Declaratory Judgment Action alleged that Hartford had appointed defense counsel to represent Fitzgerald and F&B in the underlying Old Republic suit under a reservation of rights.  (Pl.'s SMF, Dkt. [29-1] ¶ 22.)  The "reservation of rights letters" were dated November 23, 2010, and stated that Hartford was still evaluating coverage for Old Republic's claims.  (Id.)  The parties consented to extend discovery in the Old Republic suit until August 15, 2011.  (Id. ¶¶ 23-24.)  On or about July 11, 2011, Carlock Copeland withdrew as counsel for Fitzgerald and F&B.  (Id. ¶ 25.)  Soon after, Hartford withdrew its Motion to Intervene in the Old Republic suit.  (Id. ¶ 26.)

On November 8, 2011, Old Republic obtained a Consent Order and Final Judgment against Fitzgerald and F&B for the total principal sum of $357,091.33, plus pre-judgment interest of $19,882.31, plus interest at a daily

14

rate of $69.44 through the date of judgment.  (Id. ¶¶ 27-30.)  Old Republic now

seeks to recover the full amount of the Consent Judgment from Hartford.

**Discussion**

**I. Legal Standard - Summary Judgment**

Federal Rule of Civil Procedure 56 requires that summary judgment be

granted "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  "The moving

party bears 'the initial responsibility of informing the . . . court of the basis for

its motion, and identifying those portions of the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any,

which it believes demonstrate the absence of a genuine issue of material fact.'"

Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004)

(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  Where the

moving party makes such a showing, the burden shifts to the non-movant, who

must go beyond the pleadings and present affirmative evidence to show that a

genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 257  (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

Finally, in resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

16

**II.     Defendant's Motion for Summary Judgement and Motion for Hearing**

Hartford argues that Old Republic's suit is barred by collateral estoppel because this Court has already ruled that Hartford has no duty to provide coverage under the Policy and the Policy was rescinded.  (Def.'s MSJ Br., Dkt. [27-1] at 14-21.)  Under Georgia law,[1] "a judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue . . . ."  O.C.G.A. § 9-12-40.  Collateral estoppel requires proof of the following elements: (1) identity of an issue that was essential to the prior litigation and was resolved, (2) by judgment of a court of competent jurisdiction, and (3) an identity of the parties or their privies.  Wickliffe v. Wickliffe Co., 489 S.E.2d 153, 155-56 (Ga. Ct. App. 1997).  Old Republic argues that collateral estoppel is not applicable because: (1) the issues in the two cases are not identical, (2) there was no actual litigation of the issues in Hartford's Declaratory Judgment Action as the case was terminated by a default

---

[1] The parties agree that the Court must apply Georgia law on collateral estoppel in this diversity action.  (Def.'s MSJ Br., Dkt. [27-1] at 15; Pl.'s Resp. Br., Dkt. [32] at 10.)

judgment, and (3) there is no privity between Old Republic and the Insureds.[2]
(Pl.'s Resp. Br., Dkt. [32] at 10-17; Pl.'s MSJ Br., Dkt. [29-2] at 13-16.)

A.    Identity of Issues

Hartford argues that in its Declaratory Judgment Action, the essential
issues were coverage and rescission.  (Def.'s MSJ Br., Dkt. [27-1] at 16-17;
Complaint [1] and Order [9], No. 2:11-CV-0094-RWS.)  Hartford contends that
Old Republic is now seeking to invoke coverage under the same Policy and
therefore, the same key issues are present and have already been resolved in
Hartford's favor.  (Id. at 17; Complaint, Dkt. [1].)  Plaintiff asserts, without
citing any authority or evidence, that "the issues in the two cases are not
identical."[3]  (Pl.'s MSJ Br., Dkt. [29-2] at 16.)  Thus, without any effective

---

[2] The Court has gleaned Plaintiff's arguments from a review of the entire
record, including Plaintiff's brief in support of its motion for summary judgment.  The
Court considers all of Plaintiff's arguments, even though they were not raised in
appropriate filings.

[3] Old Republic raises an argument that the causes of action in the Declaratory
Judgment Action and the case at bar are not identical, one being a suit to recover
under an insurance policy and one being a suit for declaratory judgment.  (Pl.'s MSJ
Br., Dkt. [29-2] at 15.)  However, Plaintiff's argument speaks to the application of *res
judicata*, not issue preclusion or collateral estoppel.  "Under the doctrine of res
judicata, a judgment on the merits in a prior suit bars a second suit involving the same
parties or their privies based on the same cause of action.  Under the doctrine of
collateral estoppel, on the other hand, the second action is upon a different cause of
action and the judgment in the prior suit precludes relitigation of issues actually
litigated and necessary to the outcome of the first action."  Sewell v. Merrill Lynch,

18

response from Old Republic, the Court agrees with Hartford that the issues in

the cases are the same.

B.     <u>Litigation of the Issues</u>

Old Republic claims that there was no actual litigation of the issues in

Hartford's Declaratory Judgment Action because the case was terminated by

default judgment.  (Pl.'s MSJ Br., Dkt. [29-2] at 16.)  However, in Georgia, a

default judgment serves as a judgment on the merits for purposes of collateral

estoppel.  <u>Spooner v. Deere Credit, Inc.</u>, 536 S.E.2d 581, 582 (Ga. Ct. App.

2000) ("A judgment by default properly entered against parties sui juris

operates as an admission by the defendant of the truth of the definite and certain

allegations and the fair inferences and conclusions of fact to be drawn from the

allegations of the declaration."); <u>see also</u> <u>Butler v. Home Furnishing </u>Co., 296

S.E.2d 121, 122 (Ga. Ct. App. 1982) ("In order for the doctrine of estoppel by

judgment to be properly invoked, the judgment relied upon must be on the

merits of the case.  A default judgment is considered to be 'on the merits.'")

(internal citations omitted); <u>Fierer v. Ashe</u>, 249 S.E.2d 270, 272 (Ga. Ct. App.

1978) ("[T]he judgment of a court having jurisdiction of the parties and of the

---

<u>Pierce, Fenner & Smith, Inc.</u>, 94 F.3d 1514, 1518 n. 3 (11th Cir. 1996) (quoting

<u>Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322, 326 n. 5 (1979)).

subject matter operates as res judicata, in the absence of fraud or collusion, even

if obtained upon a default. . . . The application of the doctrine of res judicata in

this manner does not deprive a litigant of his right to a day in court.  That right

means not the actual presentation of the case, but the right to be duly cited to

appear and to be afforded an opportunity to be heard.") (internal quotations and

citations omitted).

Therefore, the Court agrees with Hartford that there is no merit to Old

Republic's conclusory statement that "the Hartford Default Judgment was not a

final judgment on the merits, but instead was a default judgment."  (Pl.'s MSJ

Br., Dkt. [29-2] at 14.)  The only authority cited by Old Republic for the

proposition that default judgments do not have preclusive effect is Franks v.

Thomason, 4 B.R. 814 (N.D. Ga. 1980).  That case involved a bankruptcy

action to determine the dischargeability of a judgment.  The court analyzed and

applied federal law from several circuits to conclude: "The requirement that

issues sought to be estopped must have been 'actually litigated' in the prior

proceeding contemplates something more than a one-sided presentation of facts.

Thus, even if the district court did hear evidence concerning liability prior to

rendering judgment, this court would deny collateral estoppel effect to those

issues necessary to that judgment, on the ground that they were not actually litigated." <u>Franks</u>, 4 B.R. at 821-22.

Here, the parties agree that the Court must apply Georgia law on collateral estoppel. <u>See</u> <u>Semtek Int'l v. Lockheed Martin Corp.</u>, 531 U.S. 497, 508-09 (2000) ("Under federal common law an enforcing court should apply the law of the state courts in the state where the rendering federal court sits unless the state's law conflicts with the federal law interest."); <u>accord</u> <u>Palmer & Kay, Inc. v. Marsh & McLennan Cos., Inc.</u>, 404 F.3d 1297, 1310 (11th Cir. 2005). Under the Georgia authority cited by Hartford, default judgments do serve as judgments on the merits for purposes of collateral estoppel.[4]

_____

[4] Under <u>Spooner</u>, 536 S.E.2d at 582, the default judgment against the Insureds operates as an admission by the Insureds of the truth of the definite and certain allegations and the fair inferences and conclusions of fact drawn from Hartford's Complaint. The Complaint alleges that, at the time he applied for the Policy in 2008 and applied for renewal in 2010, Fitzgerald knew of numerous incidents, acts, and omissions that could have (and did) lead to professional liability claims against him and his firm, but he did not disclose them to Hartford. (Complaint, Dkt. [1], No. 2:11-CV-0094-RWS). Hartford relied on Fitzgerald's representations when it issued and renewed the Policy. (<u>Id.</u>) The Complaint states: "F&B, LLC and Fitzgerald's material misrepresentation on their application for an insurance policy entitles Hartford as a matter of law to rescind the policies at issue . . . ." (<u>Id.</u>) The Complaint further alleges that the claims asserted against F&B and Fitzgerald by Old Republic were not covered by the Policy because the claims fell within the Policy's exclusions. (<u>Id.</u>)

AO 72A
(Rev.8/82)

C.     Privity

Old Republic argues that there is no privity between it and the Insureds because: it has different rights than those of the Insureds under the 2010 Policy and therefore, has its own direct claim against Hartford; it was not represented by the Insureds in the Hartford Declaratory Judgment Action; and it has no mutual or successive relationship to the Insureds as to the same right of property.  (Pl.'s Resp. Br., Dkt. [32] at 10-17.)  Hartford contends, however, that a judgment creditor like Old Republic derives its rights under the policy through the insured, and therefore, Old Republic can have no greater rights under the Policy than the Insureds.  (Def.'s Reply Br., Dkt. [38] at 1-6.)  The Court agrees with Hartford.

"A judgment creditor who sues on a policy indemnifying the insured against claims for damages stands in the shoes of the insured, and a breach of [a material] clause by the insured relieves that insurer of any obligation to pay the judgment."  Wolverine Ins. Co. v. Sorrough, 177 S.E.2d 819, 820 (Ga. Ct. App. 1970); see also Commercial Union Ins. Co. v. Bradley Co., 367 S.E.2d 820, 823 (Ga. Ct. App. 1988) (quoting Wolverine Ins. Co., 177 S.E.2d at 820) ("One who obtains a judgment against the insured and then seeks to enforce it against the

insurer occupies a like status [to the insured]; he derives his rights under the policy through the insured, . . . and he is entitled to recover under the policy only if it appears that all conditions precedent have been complied with.”). Indeed, in its brief in support of summary judgment, Plaintiff states: “Plaintiff is a judgment creditor of the Defendant’s Insureds and therefore stands in the shoes of the Insureds and *derives its rights under The 2010 Policy through the Insureds*.”  (Pl.’s MSJ Br., Dkt. [29-2] at 21-22 (emphasis added).)

“Privity” covers several types of relationships between a party and a nonparty, for example, “where the nonparty has succeeded to the party’s interest in property, where the nonparty controlled the original suit, where the nonparty’s interests were represented adequately by the party in the original suit, and where the party and nonparty have concurrent interests in the same property right.”  Hart v. Yamaha-Parts Distribs., Inc., 787 F.2d 1468, 1472 (11th Cir. 1986).  By its own admission, Old Republic stands in the shoes of the Insureds and derives its rights under the Policy *through* them.[5]  Therefore, the

---

[5] The Court agrees with Hartford that the authority cited by Old Republic to show a lack of privity here is distinguishable.  (Def.’s Reply Br., Dkt. [38] at 2-6.) For instance, in Walka Mountain Camp v. Hartford Accident & Indem. Co., 149 S.E.2d 365, 366 (Ga. 1966), the issue was “whether the judgment in the previous suit by the injured party against the insurer, which adjudicated that the policy as written did not cover the injury, bars the present suit by the insured to reform the policy so as

Court finds that the privity requirement is met.

In sum, the elements of collateral estoppel under Georgia law are satisfied here.  The Hartford Declaratory Judgment Action, which resulted in a final judgment on the merits, involved the same issues and privies, and thus, has preclusive effect.  Therefore, Hartford is entitled to judgment as a matter of law

---

to recite such coverage." The court concluded that "This insured is not represented by the injured party. *Nor does it claim under the injured party. Furthermore, it has no mutual or successive relationship to the injured party as to the same right of property*." Id. at 367 (emphasis added). Similarly, in Davidson v. State Farm, 288 S.E.2d 832 (Ga. Ct. App. 1982), Stonica v. State Farm, 402 S.E.2d 553 (Ga. Ct. App. 1991), and Cook v. Prudential Prop. & Cas. Ins. Co., 426 S.E.2d 222, (Ga. Ct. App. 1992), the relationships between the insureds and the injured parties were based on alleged commission of torts, not based on mutual or successive rights in the same property. Here, by contrast, Old Republic admits that it stands in the shoes of the Insureds and derives its rights under the Policy through the Insureds.

Furthermore, the Court finds no merit in Old Republic's argument that it has different or broader rights than the Insureds under the Policy. Old Republic relies on Section IIIE of the Policy, which states:

> No action shall lie against the Company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of the Coverage Form and the amount of the insured's obligation to pay shall have been finally determined . . . 2. By final judgment against the insured. Any person who, or organization which has secured such judgment . . . shall thereafter be entitled to recover under this Coverage Form to the extent of the insurance afforded by this Coverage Form. . . .

The Court finds nothing in this provision to suggest that Old Republic has broader rights than the Insureds. Instead, the provision states that Old Republic may recover *to the extent of* the coverage afforded under the Policy, not beyond.

24

and its motion for summary judgment is **GRANTED**.

### III.   Plaintiff's Motion for Summary Judgment and Motion for Hearing

This Court's previous Order in Hartford's Declaratory Judgment Action states:

> Judgment is hereby entered in favor of the plaintiff on the count of the Complaint seeking a declaratory judgment that there is no coverage under the insurance policy at issue for claims made against Stephen Vincent Fitzgerald, Jr. or Fitzgerald & Burruss, LLC.  Furthermore, judgment is hereby entered on the plaintiff's claim for rescission on the insurance contract and *the insurance policies at issue in the case are hereby rescinded and the plaintiff is relieved of any further duty to defend or provide indemnity to the defendants in this case*.

(Order, Dkt. [9], No. 2:11-CV-0094-RWS (emphasis added).)  Therefore, as of June 7, 2011, the Policy was rescinded.  There are no remaining obligations or rights under the Policy for any party.  Consequently, as a matter of law, Old Republic may not maintain an action to recover under the Policy.  Accordingly, Old Republic's motion for summary judgment is **DENIED**.

### Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment [27] is **GRANTED** and Plaintiff's Motion for Summary Judgment [29] is **DENIED**.

25

Both Motions for Hearing Regarding Motion for Summary Judgment [28, 33] are **DENIED**.

      **SO ORDERED**, this  8th   day of May, 2013.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

26